UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BRUCE P. GOLDEN, individually and as next friend of DALE M. GOLDEN,<br><br>    Plaintiffs<br><br>v.<br><br>NADLER, PRITIKIN, & MIRABELLI, LLC; JAMES B. PRITIKIN; JAMES B. PRITIKIN P.C.; MATTHEW C. ARNOUX; HELEN SIGMAN & ASSOCIATES, LTD.; HELEN SIGMAN; NANCY C. THOMAS; WENDY G. BOWES; OSVALDO RODRIGUEZ<br><br>    Defendants. | Case No. 05 C 0283<br><br>Judge Joan B. Gottschall |

## MEMORANDUM OPINION AND ORDER

Bruce P. Golden ("Golden") sued Nadler, Pritikin & Mirabelli, LLC ("Nadler"), James B. Pritikin ("Pritikin"), Matthew Arnoux ("Arnoux"), Wendy Bowes ("Bowes"), and Osvaldo Rodriguez ("Rodriguez") for copyright infringement (Count I); Nadler, Pritikin, Arnoux, and Sigman for civil RICO (Count II); Nadler, Pritikin, Arnoux, and Sigman under 42 U.S.C. § 1983 (Count III); and Nadler, Pritikin, Arnoux, Sigman, and Nancy Thomas ("Thomas") for various state law tort claims (Counts IV-XIV). Nadler, Pritikin, and Arnoux represent Jody Rosenbaum-Golden ("Rosenbaum") in her petition of dissolution of her marriage to Golden in the Circuit Court of Cook County. Sigman is the child representative for Dale Golden ("Dale") in the dissolution of marriage.

Before this court are separate motions to dismiss by: Nadler, Pritikin, and Arnoux (collectively "Nadler"); Sigman; and Thomas. Bowes has joined in these motions. Also before

1

this court is Golden's motion to strike Nadler's motion to dismiss. With respect to Count I, the court finds that it must abstain and a stay is entered as to that count pending the resolution of the ongoing state proceeding. The motions to dismiss Counts II and III are granted. After these dismissals, no federal claims remain, and the court relinquishes jurisdiction over the remaining state law claims (Counts IV-XIV). The motion to dismiss Counts IV-XIV is granted.

**I.      Motion to Strike**

Golden has filed a motion to strike Nadler's motion to dismiss arguing that it references matters outside the complaint. Golden has conceded, however, that this court may take judicial notice of matters of public record without converting the motion to dismiss into a motion for summary judgment. These matters of public record include public court documents filed in related cases. *Henson v. CSC Credit Serv.*, 29 F.3d 280, 284 (7th Cir. 1994). To the extent that the motion to dismiss refers to matters outside the complaint and the public record, the court has not considered such matters. The motion to strike is denied as moot.

**II.     Motions to Dismiss**

In reviewing a motion to dismiss for failure to state a claim, the court reviews all facts alleged in the complaint and any reasonable inferences drawn from those facts in the light most favorable to the plaintiff. *Marshall-Mosby v. Corporate Receivables, Inc.*, 205 F.3d 323, 326 (7th Cir. 2000). The court will grant the motion only if it appears that the plaintiff cannot prove any set of facts that would entitle the plaintiff to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

A.  Count I: Federal Copyright Violation

To establish copyright infringement, the plaintiff must show, among other things, that he has ownership of a valid copyright. *See Feist Publications, Inc. v. Rural Telephone Service Co., Inc.*, 499 U.S. 340, 361 (1991). Federal courts have exclusive jurisdiction to decide cases of copyright infringement. 28 U.S.C. § 1338 (2000). Therefore, it is the province of the federal court to decide ownership of federal copyrights.

Golden alleges that he owns copyrights which are registered as Registration No. TX 6-066-895 and that these defendants are infringing them by "operating and/or representing an organization that lists home[s] for sale" in a manner similar to Golden's business. Because the divorce proceeding is still pending, however, the court finds that it should abstain from making a determination of copyright ownership at this time.

Abstention doctrines are the exception to the federal courts' "virtually unflagging obligation" to hear cases within their subject matter jurisdiction. *Colorado River Water Conservation Dist. v. U.S.*, 424 U.S. 800, 817-18 (1976). Burford abstention can apply when a federal court decision would interfere with a matter of substantial state concern. *See Burford v. Sun Oil Co.*, 319 U.S. 315 (1943).

In *Burford*, the United States Supreme Court concluded that the district court should have abstained so as not to interfere with a decision by the Texas Railroad Commission to grant a permit for drilling oil wells. *Burford,* 319 U.S. at 334. The Court noted that the allocation of oil reserves was a matter of substantial state concern and that the State of Texas had consolidated review of all claims involving allocation in specialized state courts. *Id.* at 326-27. The Court then stated that exercise of federal jurisdiction would cause confusion that the state intended to

3

prevent by establishing specialized state courts and would risk "needless federal conflict with state policy." *Id.* at 327.

The Supreme Court has recognized that *Burford* abstention may be appropriate in cases where "a federal suit [was] filed prior to the effectuation of a divorce, alimony, or child custody decree" and where "the [federal] suit depended on a determination of the status of the parties." *Ankenbrandt v. Richards*, 504 U.S. 689, 705-06 (1992). It is well-recognized that "[f]amily relations are a traditional area of state concern." *See, e.g., Moore v. Sims*, 442 U.S. 415, 435 (1979). "[I]n general it is appropriate for the federal courts to leave delicate issues of domestic relations to the state courts." *Elk Grove Unified Sch. Dist. v. Newdow*, 124 S. Ct. 2301, 2309 (2004). Further, *Burford* abstention is appropriate in cases where the federal claim requires the court to decide ownership of property which may be determined in the state court divorce proceeding. *Farkas v. D'Oca*, 857 F. Supp. 300, 304 (S.D.N.Y. 1994) (holding that *Burford* abstention was appropriate where the state divorce action would determine the property rights of the spouses, which was a prerequisite to deciding the federal claim); *see also Johnson v. Thomas*, 808 F. Supp. 1316, 1320 (W.D. Mich. 1992) (holding that abstention was appropriate where the tort claims in federal court on diversity depended on the resolution of the breach of a domestic partnership agreement).

In this case, the state court in the pending divorce will determine whether Golden's and Rosenbaum's property is marital property or separate property, and the court will determine how the property should be distributed. *See* 750 ILCS 5/503. This determination may well affect this court's determination of the ownership of copyrights at issue, and conversely, if this court decided ownership prior to the state court's decision, this court's decision might unnecessarily

4

interfere with the distribution of property in the pending divorce case. Since Golden seeks primarily monetary relief, this court will stay this claim pending the resolution of the divorce case. *See Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706 (1996).

B.  Count II: Civil RICO

Golden's claim under the Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962(c) and (d), fails to state a claim because Golden has not properly pled this count.

"In order to state a viable cause of action under § 1962(c), a plaintiff must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Slaney v. The Intern. Amateur Athletic Federation*, 244 F.3d 580, 597 (7th Cir. 2001). Nadler argues that none of the predicate acts of racketeering activity have been adequately pled. The predicate acts alleged by Golden include violations of 18 U.S.C. § 2319 (criminal copyright infringement), 18 U.S.C. § 1341 (mail fraud), 18 U.S.C. § 1512 (intimidation of witnesses), and 18 U.S.C. § 1951 (Hobbs Act).[1] As discussed below, these predicate acts, with the exception of copyright infringement, have been improperly pled and therefore cannot support a claim for civil RICO. To the extent that any claims survive, they are insufficient to state a cause of action for civil RICO because they fail to allege a pattern of racketeering activity.

---

[1] Golden alleges that Nadler, Pritikin, and Arnoux's communications with Amanda Williams, Social Security Administration, Francis Parker School, Anshe Emet Day School, and the Illinois Attorney Registration and Disciplinary Commission violated 18 U.S.C. § 1341, 18 U.S.C. § 1512, and 18 U.S.C. § 1951. The court assumes that Golden intends to allege that each act violated all three statutes and will analyze them as such.

5

1. *Predicate Acts*

    a. Mail Fraud

Golden alleges that Nadler's communications with Amanda Williams, Social Security Administration ("SSA"), Francis Parker School, Anshe Emet Day School, and the Illinois Attorney Registration and Disciplinary Commission violated 18 U.S.C. § 1341, which criminalizes mail fraud. Allegations of mail fraud under § 1341 must be pled with particularity under Fed. R. Civ. P. 9(b). *Slaney v. The Intern. Amateur Athletic Federation*, 244 F.3d 580, 599 (7th Cir. 2001). "In order to satisfy this standard, a RICO plaintiff must allege the identity of the person who made the representation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Id.* (citing *Vicom, Inc. v. Harbridge Merchant Serv., Inc.,* 20 F.3d 771, 777 (7th Cir.1994)).

In this case, Golden has failed to plead his claims of mail fraud with particularity. Golden alleges that, "From and after August 2004, Nadler Pritikin, and Arnoux with Sigman's knowledge harassed and intimidated Golden's business partner Amanda Williams with the purpose and intent of having her terminate her business relationship with Golden." Assuming this is a mail fraud allegation, it fails to identify the specific time, place, and content of the alleged misrepresentations.[2] Further, Golden failed to plead the content of the alleged letters to the SSA, the Francis Parker School, the Anshe Emet Day School, and the Illinois Attorney

---

[2]While Golden did include more specific allegations with respect to Amanda Williams in his original complaint, these allegations cannot satisfy Rule 9(b) for his amended complaint. *Kelley v. Crosfield Catalysts*, 135 F.3d 1202, 1204 (7th Cir. 1998) ("It is well-established that an amended pleading supersedes the original pleading; facts not incorporated into the amended pleading are considered *functus officio.*").

Registration and Disciplinary Commission ("ARDC")[3] with particularity. Therefore, the allegations of violations of § 1341 do not satisfy the requirements of Rule 9(b) and cannot form the basis of the civil RICO claim.

                      b.         Intimidation of Witnesses

Golden alleges that Nadler, Pritikin, and Arnoux's communications with Amanda Williams, SSA, Francis Parker School, Anshe Emet Day School, and the ARDC violated 18 U.S.C. § 1512. This statute, however, does not apply to the facts alleged.

Section 1512 criminalizes harassment or intimidation to prevent a witness from testifying in an official proceeding. An "official proceeding" is defined as, "a proceeding before a judge or court of the United States, a United States magistrate judge, a bankruptcy judge, a judge of the United States Tax Court, a special trial judge of the Tax Court, a judge of the United States Court of Federal Claims, or a Federal grand jury." 18 U.S.C. § 1515(a)(1)(A). While § 1512(f) states that a § 1512 offense does not require that "an official proceeding . . . be pending or about to be instituted at the time of the offense," the requirement in the statute of an official proceeding would make little sense unless the accused was at least aware of a contemplated official proceeding or investigation.

In this case, all of the alleged communications occurred between July and November

---

[3] The court notes that Illinois attorneys have an absolute duty to report misconduct of other attorneys. *See Skolnick v. Altheimer & Gray*, 191 Ill.2d 214, 226 (2000). Further, Illinois courts have recognized that persons making reports to the ARDC enjoy absolute immunity from state law tort liability. *Lykowski v. Bergman*, 299 Ill. App. 3d 157, 165 (1st Dist. 1998). The court can find no case law determining whether a person enjoys the same immunity when the report to the ARDC is alleged as a predicate to a civil RICO claim. It seems, however, that the immunity from state tort liability would mean little if a person could simply be hailed into federal court on claims of civil RICO.

7

2004, but the case in federal court was not instituted until January 2005. Further, these allegations suggest that the alleged intimidation or harassment was directed at testimony before the state court in the pending domestic relations case and not before any federal tribunal as is required by § 1512.[4] Since Golden has not alleged that any of the complained of conduct related to an official proceeding as that term is used in § 1512, Golden cannot base his civil RICO claim on violations of that statute.

     c.   Hobbs Act

Golden alleges that these communications also violated 18 U.S.C. § 1951 ("Hobbs Act"). Under the Hobbs Act, attempts to obstruct, delay, or affect interstate commerce by robbery or extortion are criminal. 18 U.S.C. § 1951(a). "Extortion" in the Hobbs Act is defined as "the obtaining of property from another, with his consent, induced by the wrongful use of actual or threatened force, violence, or fear, or under color of official right." 18 U.S.C.§ 1951(b)(2).

It is difficult for the court to discern what Golden's theory of extortion is. Drawing all inferences in favor of Golden, he appears to be claiming that he was the victim of the alleged extortion. Golden has not alleged that Nadler, Pritikin, Arnoux, and Sigman used actual or threatened force or violence, and so the court infers that Golden is claiming that these defendants acted wrongfully "under color of official right" or through "fear." As to "official right," Golden makes sporadic references in Count II to his divorce case, a subpoena, and improper use of legal process. Golden cannot assert a violation of the Hobbs Act based on "official right," however,

---

[4]For example, in alleging the communications with Amanda Williams, Golden alleges that "[s]uch harassment and intimidation was implemented by abusive and illegal use of process in the Case utilizing the U.S. mails." The "Case" is the petition for dissolution of marriage in the Circuit Court of Cook County.

8

because an "official right" theory cannot be used against a private citizen; the alleged perpetrator must generally hold some office. *See U.S. v. Warner*, 292 F. Supp. 2d 1051, 1066 (N.D. Ill. 2003) (citing *U.S. v. McClain,* 934 F.2d 822, 831 (7th Cir.1991)). Since all of the persons alleged to have committed Hobbs Act violations are private citizens, these violations cannot be based on use of "official right."

Golden also states in his response to the motion to dismiss that his extortion theory is based on fear. For Hobbs Act extortion based on fear, the victim's fear must be reasonable. *Roger Whitmore's Auto. Services, Inc. v. Lake County, Illinois*, 424 F.3d 659, 671 (7th Cir. 2005) (citing *Sutherland v. O'Malley,* 882 F.2d 1196, 1202 (7th Cir. 1989)). Fear under the Hobbs Act can be fear of economic loss. *See, e.g., U.S. v. Lisinski*, 728 F.2d 887, 891 (7th Cir. 1984). Additionally, any Hobbs Act extortion must be designed to take the victim's property with his consent. *Rowell v. Voortman Cookies, Ltd.*, No. 02 C 0681, 2002 WL 31116640, at *7 (N.D. Ill. 2002) (holding that plaintiff had not alleged a violation of the Hobbs Act where the property was taken without the plaintiffs' consent).

In this case, the complaint is ambiguous as to what property the defendants attempted to extort from Golden. Golden alleges that the defendants harassed Amanda Williams with the purpose of having her terminate her business relationship with Golden. Presumably, defendants were not attempting to obtain Golden's consent to terminate this relationship. Therefore, it is difficult for the court to discern how this act could constitute extortion under the Hobbs Act.

Other than a conclusory allegation, Golden does not allege how the other communications to the SSA, Francis Parker School, Anshe Emet Day School, and ARDC amounted to extortion under the Hobbs Act. Golden does not allege what property defendants

9

attempted to obtain from Golden with his consent. Under the liberal notice pleading standard in federal court, the purpose of a complaint is to give a defendant notice of the claims against him and the grounds upon which they rest. *See Thompson v. Ill. Dep't of Prof'l Regulation,* 300 F.3d 750, 753 (7th Cir. 2002). Here, the complaint does not give defendants adequate notice of the extortion claim. Beyond that, it is not clear to the court, even drawing all inferences in favor of Golden, how Golden could prove consistent with his allegations that these defendants committed criminal extortion under the Hobbs Act.

> 2. *Pattern*

Although not argued by the parties, the court must also dismiss this action because Golden has failed to allege a pattern of racketeering activity.[5] A "pattern" requires at least two acts of racketeering activity during a ten-year period. *See* 18 U.S.C. § 1961(5). "Congress enacted RICO not out of concern for a sporadic fraud but out of concern for long-term conduct." *Vicom, Inc. v. Harbridge Merchant Servs.,* 20 F.3d 771, 779 (7th Cir. 1994). Therefore, the Supreme Court has added the additional requirement that a plaintiff "must show that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity." *H.J., Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 239 (1989); *see also Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 497 n. 14 (1985) (describing these factors as "continuity plus relationship") (quoting S. Rep. No. 91-617, at 158 (1969)).

---

[5]The court declines to consider the predicate of criminal copyright infringement because the court has abstained from the deciding the issue of civil copyright infringement. The court notes, however, that Golden has failed to plead continuity for the criminal copyright predicate act as well. The complaint gives no time frame for the alleged copyright infringement and alleges the infringement of one copyright. The court fails to see how this could constitute a pattern of racketeering activity.

Continuity "is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *H.J., Inc.,* 492 U.S. at 241. "In order to demonstrate a pattern over a closed period, a RICO plaintiff must 'prove a series of related predicates extending over a substantial period of time.'" *Vicom, Inc. v. Harbridge Merchant Servs.,* 20 F.3d 771, 779 (7th Cir.1994) (quoting *H.J., Inc.,* 492 U.S. at 242). The Seventh Circuit instructs that the closed-ended continuity determination should be informed by "the number and variety of predicate acts and the length of time over which they were committed, the number of victims, the presence of separate schemes and the occurrence of distinct injuries." *Vicom,* 20 F.3d at 780 (quoting *Morgan v. Bank of Waukegan,* 804 F.2d 970, 975 (7th Cir.1986)). On the other hand, "[o]pen-ended continuity is present when (1) 'a specific threat of repetition' exists, (2) 'the predicates are a regular way of conducting [an] ongoing legitimate business,' or (3) 'the predicates can be attributed to a defendant operating as part of a long-term association that exists for criminal purposes.'" *Vicom,* 20 F.3d at 782 (quoting *H.J., Inc.,* 492 U.S. at 242-43).

In this case, Golden has failed to allege either closed-ended or open-ended continuity. First, as to closed-ended continuity, the alleged predicate acts extend over a period of less than five months. The Seventh Circuit has stated that a time frame of less than nine months does not normally satisfy the duration requirement so as to be a substantial period of time for closed-end continuity. *Vicom*, 20 F.3d at 780. Examining the remaining factors, none weigh in favor of finding closed-end continuity. The alleged predicate acts include five alleged communications which Golden alleges constitute mail fraud and extortion. This is a small number of acts over the short duration. Further, the only alleged victim is Golden, and perhaps Golden's business

11

partner Amanda Williams.  Golden does not allege separate schemes that the court can discern.  Finally, as best the court can tell, Golden alleges only one injury, to his business.  The court cannot determine if any other distinct injuries are alleged because Golden uses vague terms to describe his injuries, such as "Golden proximately suffered great damage."  Golden has not alleged closed-ended continuity.

Golden has also not alleged open-ended continuity.  Open-ended continuity can be established for conduct of a short duration as long as the plaintiff has alleged a "threat of continuity."  *Vicom*, 20 F.3d at 782.   This threat of continuity can be established by showing: (1) 'a specific threat of repetition' exists, (2) 'the predicates are a regular way of conducting [an] ongoing legitimate business,' or (3) 'the predicates can be attributed to a defendant operating as part of a long-term association that exists for criminal purposes.'" *Id.* (quoting *H.J., Inc.,* 492 U.S. at 242-43).

The Seventh Circuit has held that schemes that have a natural ending point cannot support "a specific threat of repetition." *Id.* at 782-83.  The conduct alleged by Golden has a natural ending point: the end of the domestic relations case.  Golden has alleged that Nadler, Pritikin, Arnoux, and Sigman communicated with Amanda Williams, SSA, Francis Parker School, Anshe Emet Day School, and ARDC and that these communications were an abuse of legal process.  Nadler, Pritikin, and Arnoux represent Golden's ex-wife in the domestic relations case, and Sigman is the child representative in that case.  Golden has not alleged anything that would support an inference that any scheme would continue past the end of the domestic relations case.  Since the alleged scheme has a natural ending point, Golden has not alleged a

specific threat of repetition.[6]

Further, Golden does not allege that the predicates are a regular way of conducting the defendants' ongoing legitimate business. Instead, Golden alleges only that the predicates were carried out in the conduct of the normal business operations of Nadler and Sigman. There is certainly a distinction between carrying out fraud, for example, incidental to normal business operations and fraud being the point of the normal business operation. *See Vicom*, 70 F.3d at 783 (holding that the plaintiff must allege that the predicate acts are a regular way of conducting the ongoing business). To establish open-ended continuity, Golden must allege the latter, which he has not done.

The final way that Golden could allege open-ended continuity would be to show that "a defendant [is] operating as part of a long-term association that exists for criminal purposes." Golden's complaint does not suggest this type of association. Golden has failed to allege a pattern of racketeering activity sufficient to state a claim for RICO, and the court grants the motions to dismiss Count II under § 1962(c).

        3.        *Conspiracy under § 1962(d)*

Count II also mentions § 1962(d) in passing. Subsection (d) of § 1962 makes it "unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." To state a claim for conspiracy under § 1962(d), a plaintiff must allege that (1) the defendant agreed to use or invest racketeering income in an enterprise, or, through a pattern of racketeering activity, to acquire or maintain an interest in or control of an enterprise or to

---

[6]Golden's complaint contains conclusory allegations that the activity alleged will continue. Bald allegations, however, cannot support a threat of continuity. *Vicom*, 20 F.3d at 783.

13

participate in the affairs of an enterprise, and (2) the defendant further agreed that, in furtherance of this goal, someone would commit at least two predicate acts constituting a pattern. *Slaney v. Int'l Amateur Ath. Fed'n,* 244 F.3d 580, 600 (7th Cir. 2001). The complaint is exceedingly vague on any claim of conspiracy under § 1962(d), and the court concludes that, to the extent that Golden intended to plead such a claim, he has failed to satisfy the requirements of notice pleading.

To the extent that Golden has alleged a conspiracy by his conclusory allegation that "each of them did conspire with the others to further the predicate acts undertaken by one or more of the others," this allegation fails to state a claim because, for the reasons stated above, the predicate acts do not constitute a pattern. Therefore, the motion to dismiss Count II under § 1962(d) is granted.

    C.    Count III: 42 U.S.C. § 1983

Golden has sued Sigman under 42 U.S.C. § 1983. Sigman is Dale's child representative in the state divorce proceeding. Golden has also sued Nadler, Pritikin, and Arnoux, who represent Golden's ex-wife in the state divorce proceeding, under § 1983 for acting in concert with Sigman. Golden alleges that Sigman, Nadler, Pritikin, and Arnoux violated his rights under the due process clause of the Fourteenth Amendment and limited his freedom of association in contravention to the First Amendment. Specifically, Golden alleges that these defendants violated Golden's right to the care, custody, and control of Dale.

The court first notes that, to the extent that Golden is attempting to allege an injury caused by the state court's determination of child custody, his claim is barred by the *Rooker-Feldman* doctrine. *See Edwards v. Illinois Bd. of Admissions to Bar*, 261 F.3d 723, 729 (7th Cir.

2001) ("If [the injury alleged by the federal plaintiff resulted from the state court judgment itself], then the federal courts lack subject matter jurisdiction, even if the state court judgment was erroneous or unconstitutional.").[7] Assuming that Golden has alleged an injury distinct from the state court judgment, Golden cannot state a claim under § 1983 because Sigman was not a state actor and because Sigman is immune from suit.

       *1.*      *State Action*

The defendants make only passing reference to the requirement of state action for a claim under § 1983. A § 1983 plaintiff must show that a defendant acted under color of state law. *Tarpley v. Keistler*, 188 F.3d 788, 791 (7th Cir. 1999) (stating that the two requirements, alternatively called color of law and state action are "functionally equivalent"). Under the Illinois Marriage and Dissolution of Marriage Act, courts can appoint an attorney to serve as a child's representative. 750 ILCS 5/506. The statute explicitly details the role of a child representative:

> [A] child's representative [has a duty] to advocate what the representative finds to be in the best interests of the child after reviewing the facts and circumstances of the case. The child's representative shall have the same power and authority to take part in the conduct of the litigation as does an attorney for a party and shall possess all the powers of investigation and recommendation as does a guardian ad litem. The child's representative shall consider, but not be bound by, the expressed wishes of the child. A child's representative shall have received training in child advocacy or shall possess such experience as determined to be equivalent to such training by the chief judge of the circuit where the child's representative has been appointed. The child's representative shall not disclose confidential communications made by the child, except as required by law or by the Rules of Professional Conduct. The child's representative shall not be called as a witness

---

[7]To the extent that the child custody issue is still pending before the state court, the same abstention principles discussed in Count I would apply to this claim because resolution of this claim would require this court to review and possibly interfere with the state court child custody determination.

15

regarding the issues set forth in this subsection.

750 ILCS 5/506(a)(3).[8] The court finds that Golden's § 1983 claim lacks adequate allegations of state action, and Count III must also be dismissed on this basis.

Another court in this district has determined that an attorney appointed to represent a child's interest in a domestic relations proceeding is not a state actor because the conduct of appointed counsel does not constitute state action. *Offutt v. Kaplan*, 884 F. Supp. 1179, 1191-92 (N.D. Ill. 1995). The court agrees because, although paid by the state, child representatives are charged with representing the interests of the child and not the interests of the state.

In *Polk County v. Dodson*, 454 U.S. 312, 325 (1981), the Supreme Court held that public defenders are not state actors "when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding." Additionally, courts have held that privately retained lawyers are not state actors. *See, e.g., Bilal v. Kaplan,* 904 F.2d 14, 15 (8th Cir.1990) (per curiam); *Jackson v. Walsh*, No. 93 C 4692 1993 WL 313359, at *1 (N.D. Ill. Aug. 13, 1993).

Two courts of appeal outside this circuit and several district courts have held that a child representative or guardian ad litem does not act under color of state law merely because the representative was appointed by the state. *Kirtley v. Rainey*, 326 F.3d 1088, 1094 (9th Cir. 2003); *Meeker v. Kercher,* 782 F.2d 153, 155 (10th Cir.1986); *see also Offutt,* 884 F. Supp. at 1191-92; *Arena v. Department of Social Services of Nassau County*, 216 F. Supp. 2d 146, 155 (E.D.N.Y. 2002) (citing cases); *Sophapmysay v. City of Sergeant Bluff, Iowa*, 218 F. Supp. 2d

---

[8]The Illinois legislature has recently amend this section in Public Act 94-640. The amendment does not take effect, however, until January 1, 2006. Sigman's role as child representative in this case was under the current version, and that version controls in this case.

1027, 1043 (N.D. Iowa 2002); *Snyder v. Talbot*, 836 F. Supp. 19, 24 (D. Me. 1993).[9]

This court finds that a child representative is not acting under color of state law merely because the representative is appointed by the court. Under the Illinois statute, a child representative is required to act in the best interests of the child and is not required perform any duties for the state. Although an appointed attorney can act under color of state law if the attorney conspires with state officials to deprive the client of constitutional rights, *see Tower v. Glover,* 467 U.S. 914, 916 (1984), Golden has alleged only that Sigman conspired with his ex-wife's private attorneys and not with any state officials. Therefore, Golden has failed to state a claim under § 1983 because Golden has not alleged state action. The motions to dismiss Count III is granted.

    2.    *Immunity*

In addition to Golden's failure to allege state action, Sigman has absolute immunity in her role as child representative. Officials seeking absolute immunity for their alleged unconstitutional conduct have the burden of showing that such immunity should apply. *Harlow v. Fitzgerald*, 457 U.S. 800, 808 (1982) (citing *Butz v. Economou*, 438 U.S. 478, 506 (U.S. 1978)). The Supreme Court has stated that "[a]bsolute immunity is . . . necessary to assure that judges, advocates, and witnesses can perform their respective functions without harassment or

---

[9]Another court in this district has held that guardians ad litem may be state actors and the court should evaluate this issue on a case-by-case basis. *Kohl v. Murphy*, 767 F. Supp. 895, 900 (N.D. Ill. 1991). That case is distinguishable from the present case because the guardian in that case was an employee of the Public Guardian for Cook County, and the case involved termination of the parental rights of a couple's adopted son. The role of the public guardian is more likely to be aligned with the state when the state seeks to terminate someone's parental rights than when an appointed attorney represents the best interest of a child in a dissolution of marriage proceeding.

17

intimidation." *Butz*, 438 U.S. at 512. Sigman argues that she is entitled to absolute immunity in her role as an advocate in the state court proceeding.

The Supreme Court has identified several factors relevant to the determination of whether a person is entitled to absolute immunity: "(a) the need to assure that the individual can perform his functions without harassment or intimidation; (b) the presence of safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct; (c) insulation from political influence; (d) the importance of precedent; (e) the adversary nature of the process; and (f) the correctability of error on appeal." *Cleavinger v. Saxner*, 474 U.S. 193, 202 (1985) (citing *Butz*, 438 U.S. at 512). These factors weigh strongly in favor of granting Sigman absolute immunity. Child custody battles can be emotionally charged, and child representatives in contentious cases may be subject to harassment and intimidation if they are not immune from suit. Further, the dissatisfied party can bring any concerns before the state court judge if the child representative has acted inappropriately. While in theory the process should not be adversarial because all parties in a custody proceeding should be concerned with the best interests of the child, in practice these proceedings are often adversarial because the parties disagree as to what those interests are. These factors show that absolute immunity is appropriate for child representatives involved in custody determinations.

This finding is in accord with holdings of other courts. In addressing absolute immunity of guardians ad litem for state claims, the Seventh Circuit stated:

> Although no Illinois case has addressed the issue of immunity with respect to a [guardian ad litem's ("GAL")] conduct in a judicial proceeding, state courts which have addressed the general issue of GAL immunity have granted GALs absolute immunity. Those courts reasoned that, absent absolute immunity, the specter of litigation would hang over a GAL's head, thereby inhibiting a GAL in performing duties essential to the welfare of the child whom the GAL represents.

18

> We believe that the Illinois Supreme Court would find this reasoning persuasive
> and grant a court-appointed GAL absolute immunity from lawsuits arising out of
> statements or conduct intimately associated with the GAL's judicial duties.

*Schieb v. Grant*, 22 F.3d 149, 157 (7th Cir. 1994) (citations omitted). Courts have used similar reasoning in holding that guardians ad litem are immune from § 1983 claims. *Fleming v. Asbill*, 42 F.3d 886, 889 (4th Cir. 1994) (citing *Kurzawa v. Mueller,* 732 F.2d 1456, 1458 (6th Cir.1984) ("A failure to grant immunity would hamper the duties of a guardian ad litem in his role as advocate for the child in judicial proceedings."); *McCuen v. Polk County, Iowa*, 893 F.2d 172, 174 (8th Cir. 1990) (holding that a guardian ad litem was absolutely immune for his role in preparing and signing motions for orders in court); *Offutt,* 884 F. Supp. at 1192; *Amaya v. McManus*, 04 C 0913, 2005 WL 2334342, at *8 (E.D. Wis. Sept. 23, 2005) (holding that the guardian ad litem was entitled to absolute immunity); *but see Gardner v. Parson,* 874 F.2d 131, 145 (3rd Cir.1989) (holding that immunity should be available only while the guardian is playing a judicial role). Based on this case law and the *Cleavinger* factors, the court finds that Sigman is immune from suit for her role as a child representative. The motion to dismiss Count III is granted.

### D. Count IV-XIV: State Law Claims

Since no viable federal claims remain, the court relinquishes jurisdiction over plaintiffs' pendent state claims. *Wright v. Associated Ins. Cos.,* 29 F.3d 1244, 1251 (7th Cir. 1994) ("The general rule is that once all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendent state-law claims rather than resolve them on the merits.").[10]

---

[10]The court still retains jurisdiction over Count I for copyright infringement during the stay. The state claims, however, are not "so related to [Count I] that they form part of the case case or controversy." *See* 28 U.S.C. § 1367. The state law claims include abuse of process,

The motions to dismiss Counts IV-XIV are granted.

### III. Conclusion

For the foregoing reasons, the court enters a stay as to Count I. The motions to dismiss all remaining counts (II-XIV) are granted.

ENTER:

\_\_\_\_\_/s/_____
Joan B. Gottschall
United States District Judge

Dated: November 1, 2005

---

defamation, false light invasion of privacy, breach of fiduciary duty, civil conspiracy, and aiding tortious conduct by Rosenbaum. None of these claims is suffciently related to the copyright claim to warrant the exercise of pendent jurisdiction. *See Ammerman v. Sween*, 54 F.3d 423, 424 (7th Cir. 1995) (stating that "the state and federal claims derive from a common nucleus of operative facts"); *Lynam v. Foot First Podiatry Centers, P.C.*, 919 F. Supp. 1141, 1148 (N.D. Ill. 1996) (stating that the pendent state claim must "revolve[] around a central fact pattern").