**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| BRUCE P. GOLDEN et al, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Case No. 05 C 0283 |
| v. ) | |
| ) | Judge Joan B. Gottschall |
| NADLER, PRITIKIN & ) | |
| MIRABELLI, LLC et al. ) | Magistrate Judge Arlander Keys |
| ) | |
| Defendants. ) | |
| ) | |

## MEMORANDUM OPINION AND ORDER

On July 23, 2007, this court filed an order (the "July 23rd order") adopting in part and rejecting in part the magistrate judge's report and recommendation on defendants' Nadler, Pritikin & Mirabelli, LLC, James Pritikin, and Matthew Arnoux's (collectively "NPM"), Helen Sigman & Associates, and Helen Sigman's (collectively "Sigman"), and Nancy Frank-Thomas' ("Thomas") separate motions seeking sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure. The court also directed the defendants to submit detailed documentation concerning their attorneys' fees and expenses related to those counts upon which they had prevailed. After the defendants submitted the documentation, plaintiffs Bruce P. Golden et al. (collectively "Golden") submitted memoranda in opposition to the plaintiffs' submission; the defendants subsequently filed briefs in reply. Although the court did not order a full briefing by the parties of this issue in its July 23rd order, it has carefully examined the submitted briefs and documentation (including billing statements) and, for the reasons set forth below, grants attorneys' fees

1

and expenses to NPM in the sum of $1737.29; to Sigman in the sum of $16,060.23, and to Thomas in the sum of $10,856.

## I. BACKGROUND

This case arises as a consequence of a petition for divorce brought by Golden's estranged wife, Judy Rosenbaum ("Rosenbaum"), in the Circuit Court of Cook County. All of the defendants in the instant case were involved, one way or another, with those divorce proceedings. Golden filed a fourteen-count complaint in this court against the defendants, alleging: copyright infringement against NPM and defendants Wendy G. Bowes ("Bowes) and Osvaldo Rodriguez ("Rodriguez") (Count I); civil RICO violations against NPM and Sigman (Count II); violations of 42 U.S.C. § 1983 (2006) against NPM, Sigman, and Thomas (Count III), and assorted state law tort claims against NPM, Sigman, and Thomas (Counts IV-XIV). On November 1, 2005, the court ruled on motions to dismiss filed by NPM, Sigman, and Thomas. *Golden v. Nadler, Pritikin & Mirabelli, LLC*, No. 05 C 0283, 2005 WL 2897397, at *1 (N.D. Ill. Nov. 1, 2005). The court first abstained and stayed judgment with respect to Count I pending resolution of the underlying state divorce proceedings. *Id.* at *2. The court then dismissed Counts II and III and refused to exercise pendent jurisdiction over the remaining state law claims (Counts IV-XIV). *Id.* at *3, **8-11.

Following the court's order, NPM, Sigman, and Thomas filed separate motions to recover attorneys' fees and expenses pursuant to Rule 11 of the Federal Rules of Civil Procedure. In its July 23rd order, the court reviewed the report and recommendation of Magistrate Judge Keys concerning defendants' Rule 11 motions. The court adopted Magistrate Judge Keys' recommendation that Golden was liable to NPM for attorneys'

fees and expenses associated with Count II, but declined to accept his recommendation that Golden pay for attorneys' fees and expenses associated with Counts III and IV.  With respect to Sigman's motion, the court adopted Magistrate Judge Keys' recommendation that Sigman be awarded attorneys' fees and expenses associated with Count II and Counts IV through XIV (but not Count III).  Finally, with respect to Thomas' motion, the court adopted the recommendation of the magistrate judge that Golden be ordered to pay for Thomas' attorneys' fees and expenses associated with Counts X and XII (but not those associated with Counts VII and XIV).  The court then ordered each of the defendants to submit such documentation as would permit the court to determine the attorneys' fees and expenses attributable to each claim.

## II. ANALYSIS

Federal Rule of Civil Procedure 11(b) requires that an attorney or unrepresented party, presenting to the court pleadings, motions, or other papers to the court, certifies that:

> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b)(1-4).  Moreover, if, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an

appropriate sanction. Fed. R. Civ. P. 11(c)(1). A motion for such a sanction may be made in the form of a separate motion by the parties (as in the instant case), or on the court's own initiative, and may comprise part or all of the reasonable attorneys' fees and other expenses directly resulting from the violation. Fed. R. Civ. P. 11(c)(2); 11(c)(3); 11(c)(4). Any such sanction imposed under Rule 11 must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated. Fed. R. Civ. P. 11(c)(4).[1]

The method by which attorneys' fees and other expenses are best calculated by the court is outlined by the U.S. Supreme Court in *Hensley v. Eckerhart*, 461 U.S. 424, 433-34 (1983). The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. *Hensley*, 461 U.S. at 433. The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed. *Id.* Where the documentation of hours is inadequate, the district court may reduce the award accordingly. *Id.* Moreover, "billing judgment" is an important component of such calculations: counsel for a prevailing party should make a good faith effort to exclude hours that are excessive, redundant, or otherwise unnecessary, and should eschew charging expenses for cases that are overstaffed. *Id.* at 434.

---

[1] The plain language of Rule 11 is enough for the court to deal with Golden's spurious argument, repeated in his opposition to all three defendants' fee petitions, that attorneys' fees and expenses claimed for filing the motions were inappropriate because "neither the Magistrate nor the District Court suggested that sanctions were being imposed under Rule 11(c)(1)(A)" but rather under Rule 11(b)(2) and hence, the sanctions described in 11(c)(1)(A) are inapplicable. The sanctions described in Rule 11(c)(1)(A) are imposed precisely for violations of Rule 11(b), which the magistrate judge and the court held that Golden had violated with respect to the various counts described above. Moreover, fees and expenses "must be those that directly result from a party's or attorney's sanctionable conduct." *Divane v. Krull Elec. Co.*, 200 F.3d 1020, 1030 (7th Cir. 1999); *see also* Fed R. Civ. P. 11(c)(2). In the instant case, the expenses incurred in preparation of the Rule 11 motions derives directly from the filing by Golden of the sanctionable counts and are therefore proportionally accounted by the court.

This calculation of attorneys' fees and expenses in this case is complicated somewhat by the fact that Golden has been held to have violated Rule 11 with respect only to certain counts for each defendant. In deciding upon a fee award in a case where a party has only partially prevailed, a court must apportion the award according to the results actually achieved. *Divane v. Krull Elec. Co.*, 319 F.3d 307, 315 (7th Cir. 2003) (citing *Hensley,* 461 U.S. at 434-37). In cases "where 'the [movant's] claims of relief ... involve a common core of facts or [are] based on related legal theories,' so that 'much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis, ... the district court should focus on the significance of the overall relief obtained by the [movant] in relation to the hours reasonably expended on the litigation.'" *Ustrak v. Fairman*, 851 F.2d 983, 988 (7th Cir. 1988) (quoting *Hensley,* 461 U.S. at 435). Wide latitude is given to district courts in setting awards of attorneys' fees under such circumstances, for "neither the stakes nor the interest in uniform determination are so great as to justify microscopic appellate scrutiny." *Ustrak*, 851 F.2d at 987. The court now turns to the consideration of each defendant's submitted documents in turn.

**A. Methodology**

After conducting an initial analysis to determine whether the fees requested were reasonable with respect to the attorneys' hourly rates and the total number of hours accrued, the court carefully examined the billing documents submitted by each of the parties. Those billing entries stating with particularity that a given billed task or expense was specifically and exclusively related to the subject matter of the count for which

attorneys' fees were granted were allowed in full.[2] Entries which addressed subject matter that was exclusively and specifically related to claims which were not awarded attorneys' fees were disallowed in their entirety. The amounts of the remaining entries, those which were neither specifically nor exclusively devoted to the subject matter of a count which had either been granted or denied attorneys' fees[3], were added and the sum divided by the number of total contested counts against that particular defendant in the plaintiffs' initial or amended complaints.[4] The quotient thus obtained was multiplied by the number of counts for which the court granted attorneys' fees and expenses to the defendant. The resulting product was the total granted to a given defendant in attorneys' fees and expenses.

**B. NPM's Attorneys' Fees and Expenses**

The initial point from which to determine the reasonableness of an attorney's fees is the presumptive market value of her work: i.e., her standard hourly rate. *Gusman v. Unisys Corp.*, 986 F.2d 1146, 1150 (7th Cir. 1993). The attorney's affidavit alone does not establish the reasonable market rate, but "in conjunction with other evidence of the rates charged by comparable lawyers is sufficient to satisfy [the party's] burden." *Harper v. City of Chicago Heights*, 223 F.3d 593, 604 (7th Cir. 2000); *see also Markon v. Bd. of Educ. of the City of Chicago*, No. 05 C 3715, 2007 WL 1232196, at *1 (N.D. Ill. April 25, 2007). A significant departure from this rate must have some reason other than the ability to identify a different average rate in the community, e.g., an attorney did not

---

[2] *E.g.*, "Research re privileges and pleading requirements for defamation claims in federal court" for defendant Thomas (Count X).
[3] *E.g.*, "Conference with [attorney] regarding arguments to be put forth in responsive pleading."
[4] Count I, which was held in abeyance, was not added to the total of counts for any of the defendants.

display the excellence or achieve the time savings that justify a higher rate, or the party did not require top talent for a no-brainer case. *Gusman*, 986 F.2d at 1151.

In her affidavit, NPM's attorney Cynthia Vocat ("Vocat") attests that while she was employed at NPM her standard billing rate was $200/hour and $250/hour for court and deposition appearances. Upon opening her own private practice in September 2006 (since which time she has continued to be involved in the case) her billing rate has been $225/hour. Enrico Mirabelli ("Mirabelli"), a founding principal of NPM, billed at $375/hour and $400/hour for court and deposition appearances. Erin Masters, a junior associate attorney, billed at $125/hour. Paralegal efforts were billed at $90/hour, and law clerk efforts were billed at $50/hour. These hours are close enough to, or less than, the approximate mean rate charged by Chicago attorneys for cases of this kind such that the presumptive standard of reasonableness of the hourly rates charged will not be disputed by the court. *See, e.g.*, *Markon*, 2007 WL 1232196, at *1 (lead attorney's hourly rate of $285/hour in similar case was reasonable). Mirabelli, as a senior partner, billed at a considerably higher rate, but his involvement with the case was apparently peripheral (Mirabelli's two billing entries were for a conference concerning, and review of, defendants' motion to dismiss: Mirabelli billed a total of 0.75 hours).

NPM was named as a defendant in Counts I-V, VIII, XII, and XIV, or a total of seven of the thirteen-counts considered herein (Count I is not considered). NPM was granted attorneys' fees and expenses with respect to Count II only. NPM's total time billed to the case amounts to 69.9 hours for a total of $12,311 in attorneys' fees. Of that total, the court disallows $150 billed on July 10, 2005 to a law clerk for three hours of research on conspiracy and extortion claims (attorneys' fees were not granted for that

7

count), leaving a total of $12,161. The court therefore grants one-seventh of the total allowable billed hours ($12,161/7 total counts x 1 count), or $1,737.29 to NPM.

Golden makes numerous objections to NPM's proposed fees, but these are typical of the needlessly disputatious and baseless arguments that have brought this case to its present posture. Golden argues that Vocat's affidavit is inadmissible because it can set forth only facts that are admissible in evidence. The argument is without merit; courts routinely accept attorneys' affidavits as a starting point in determining the reasonableness of the attorneys' fees. *See, e.g.*, *Spegon v. Catholic Bishop of Chicago,* 175 F.3d 544, 551 (7th Cir. 1999); *Boim v. Quranic Literacy Institute*, No. Civ. 00 C 2905, 2003 WL 1956132, at *7 n.5 (N.D. Ill. 2003); *Markon*, 2007 WL 1232196, at *2. Moreover, Vocat attests in her affidavit that she maintained contemporaneous records with NPM after she left that firm.

The court likewise disagrees with Golden's contention that 69.9 hours were "excessive, redundant or unnecessary"; a careful review of the hours accrued, and the tasks to which the time was put, reveals that they are not disproportionate to this type of multi-count litigation in federal court. Golden's contention that Count II was not specifically mentioned in many the billing statements has been negated by the court's computational approach to determining the fees. Only those entries which addressed work which was performed exclusively on a task related to a count that was not awarded attorneys' fees were excluded. The court disagrees with Golden's contention that only those billing entries which relate specifically and explicitly to a count for which attorneys' fees have been granted, to the exclusion of all other counts, may be accounted by the court. *See, e.g.*, *Ustrak*, 851 F.2d at 988. Golden's claim that NPM failed to

mitigate damages almost aspires to irony when one considers the conduct of this case. Golden filed a fourteen-count complaint that this court has found to be largely frivolous and harassing, and defendants timely moved to dismiss both Golden's initial and his amended complaint. Both the magistrate judge and this court have found that many of those counts were subject to sanctions under the Federal Rule of Civil Procedures 11(b). Moreover, there is nothing in the billing records that suggests that the defendants did anything less than represent their clients in a conscientious and professional manner. Golden's objection that NPM's lawyers spent time reviewing the court's decisions concerning NPM's co-defendants is similarly without merit; it strikes the court rather as a conscientious monitoring the progress of the overall case, and the time spent in review of these decisions was not excessive. The court therefore awards NPM attorneys' fees and expenses related to Count II in the amount of $1,737.29.[5]

**C. Sigman's Attorneys' Fees and Expenses**

Sigman's attorney billed for services at a rate of $165/hour from January 7, 2005 through October 27, 2005, and thereafter at a rate of $170/hour. A total of 111.92 hours were billed for a total of $18,241.40. A total of $50.54 in expenses was also billed. Employing the methods described above, the court finds the attorneys' rates reasonable. Moreover, the hours expended in pursuing this case, although higher than NPM's, are also not unreasonable. The court is concerned that only attorneys' rates are billed in the documents provided; there is no billing for paralegal or clerical services. Nevertheless, a review of the records does not exhibit any billed tasks that are beneath the skills of a lawyer and thus required to be billed at a lower rate.

---

[5] Golden's objections to Sigman's and Thomas' submissions are largely duplicative of his objections to NPM's and are, for the same reasons, overruled.

In the court's July 23rd order, Sigman was granted attorneys' fees and expenses relating to Count II and Counts IV-XIV. However, Sigman was named as a defendant in the complaint and amended complaint only in Counts II, VI, IX, XI, XII, XII, and XIV; therefore Sigman was awarded fees for seven of the eight total counts against her in Golden's complaint. Sigman is granted the full amount of a charge of $115.50 billed on January 21, 2005 and for $676.50 on February 6, 2005, both for research on civil RICO (Count II). Of the remaining balance ($17,449.40), Sigman is entitled to seven-eighths, or $15,268.23 ($17,449.40/8 total counts x 7 counts). To this is added the full amounts allowed above ($115.50 + 676.50) for a total amount of $16,060.23 granted to Sigman in attorneys' fees and expenses.

**D. Thomas' Attorneys' Fees and Expenses**

MSM Law LLC (f/k/a Miller & Sweeney LLC) ("MSM Law") represented Thomas in this suit. MSM Law's lead attorney on the case is Matthew Miller ("Miller") who billed this case at a rate of $250/hour (increased as of September 12, 2005 to $285/hour). Miller assigned work on the case to other members of his firm at the following hourly rates: Partner $250/$285; Associate $175; Law Student Clerk $75; Senior Paralegal $80; Legal Assistant $50. Employing the analysis described above, these rates are reasonable for attorneys working on this type of case in the Chicago area. *See also Markon*, 2007 WL 1232196, at *2 (explicitly holding that these rates are reasonable). According to Miller's affidavit and time sheets, a total of 54 Partner hours, 6.75 Associate hours, 8 Law Clerk hours, 4.5 Senior Paralegal hours, 8.5 Legal assistant hours were billed. A review of the number of hours billed (91.75 hours total) and the manner in which the tasks were allocated to different personnel reveals that they are not

unreasonable in the context of this case. A total of $21, 945.00 was billed by MSM Law. A further $2032.50 was redacted by MSM Law as not relating to the counts against Thomas, resulting in a total of $19, 912.50.[6]

From this total the court excludes the following charges as being specifically and exclusively unrelated to Count X (defamation) and Count XII (false light) against Thomas:

| Item Number | Date | Task | Hours | Hourly Rate | Total |
|---|---|---|---|---|---|
| 2073 | 4/10/2005 | Research re abuse of process | 3 | $75 | $225.00 |
| 1644 | 4/11/2005 | Correspondence re abuse of process | 0.25 | $250 | $62.50 |
| 2074 | 4/11/2005 | Research re abuse of process | 0.75 | $75 | $56.25 |
| 2077 | 4/12/2005 | Memo re abuse of process | 2 | $75 | $150 |
| 2075 | 4/13/2005 | Conference re abuse of process | 0.25 | $75 | $18.75 |
| | | | | **Total** | **$512.50** |

Furthermore, the following charges are allowed in full:

| Item Number | Date | Task | Hours | Hourly Rate | Total |
|---|---|---|---|---|---|
| 1010 | 2/6/2005 | Research re defamation claims | 1 | $250.00 | $250.00 |
| 868 | 2/24/2005 | Research re defamation claims | 1 | $250.00 | $250.00 |
| 1016 | 2/28/2005 | Research re defamation claims | 2.25 | $250.00 | $562.00 |
| 870 | 3/1/2005 | Research re defamation claims | 5 | $250.00 | $1,250.00 |
| | | | | **Total** | **$2,312.00** |

When these amounts are excluded, the resulting total is $17,088.00.

Thomas was granted attorneys' fees and expenses on two counts (X and XII) and was named as a defendant in two other counts (VII and XIV) which were not granted

---

[6] The court rejects Golden's contention that Miller's billing records impermissibly employ "block billing." Block billing occurs when an attorney "simply lists a string of tasks performed on a particular day, and the total time spent on them, without indicating how much time was spent on each of the tasks." *Bretford Mfg., Inc. v. Smith System Mfg. Co.*, 421 F. Supp. 2d 1117, 1119 (N.D. Ill. 2006). Miller allocated time in quarter-hour intervals and with sufficient particularity to meet the court's requirements. Moreover, the court's proportional allocation of fees reflects discounting of time spent on those counts that were not granted attorneys' fees and expenses.

attorneys' fees. Therefore the total amount of attorneys' fees granted is one-half of the remainder above: $8544.00 ($17,088/4 total counts x 2 counts). To this amount is added the $2,312.00 that was allowed in full, resulting in a total of $10,856.00 in attorneys' fees and expenses granted to Thomas.

### III. CONCLUSION

For the reasons set forth above, attorneys' fees and expenses are granted in the amount of $1737.29 to NPM, $16,060.23 to Sigman, and $10,856.00 to Thomas.

ENTER:

/s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: February 1, 2008